TIREMAN-JOY-CHICAGO IMPROVEMENT ASSOCIATION
*v.* CHERNICK.

1. MUNICIPAL CORPORATIONS — ZONING — UNNECESSARY HARDSHIP — DUE PROCESS.

Finding of unnecessary hardship by city board of zoning appeals in the application of city zoning ordinance to defendants' tracts of 15 lots without a disclosure of facts by the board which supported its determination *held*, a denial of due process in suit by property owners to review board's decision (CL 1948, § 125.581 *et seq.*, as amended; Detroit Zoning Ordinance [1957], § 20.7).

2. ADMINISTRATIVE LAW—DUE PROCESS—FRAUD—BAD FAITH.

Once a complainant has shown a lack of administrative due process it is utterly immaterial that there be fraud, bad faith, mendacity or deceit, or other misconduct charged.

3. MUNICIPAL CORPORATIONS—ZONING ORDINANCE—VARIANCE—FINDING OF BOARD OF ZONING APPEALS.

The broad grant of authority to the board of zoning appeals to authorize variances where the literal enforcement of the ordinance would result in unnecessary hardship or involve practical difficulties may result in arbitrary action if the board does not set forth its reasons and facts upon which it bases its finding for a variance (CL 1948, § 125.581 *et seq.*; Detroit Zoning Ordinance [1957], § 20.7).

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 4, 7] 58 Am Jur, Zoning § 228.
[2] 42 Am Jur, Public Administrative Law § 116.
[5] 42 Am Jur, Public Administrative Law § 149.
  Necessity of express finding of fact to support administrative determinations. 146 ALR 209.
[6] 42 Am Jur, Public Administrative Law § 211.
[8] 58 Am Jur, Zoning § 229 *et seq.*
[9] 58 Am Jur, Zoning § 250.
[10] 14 Am Jur, Costs § 106.

4. SAME—ZONING ORDINANCE—FINDING OF BOARD OF ZONING AP-
PEALS.

The provision of city's zoning ordinance that the decision of the
board of zoning appeals shall be final insofar as it involves
discretion or the finding of facts would preclude a court from
making a meaningful review if the finding made by the board
is not accompanied by a full disclosure on the record of the
facts relied upon for the board's findings (CL 1948, § 125.581
*et seq.*; Detroit Zoning Ordinance [1957], § 20.7).

5. ADMINISTRATIVE LAW—FINDINGS—JUDICIAL REVIEW.

The combination of a delegation of broad powers to an admin-
istrative agency plus restricted review cannot be employed
to prevent effective recourse to courts and since the judicial
function cannot be discharged without a knowledge of the
facts justifying the agency's statutory conclusion, the agency
must set forth its reasons and facts justifying its determi-
nation.

6. SAME—FINDING OF FACTS.

It is not the function of the Supreme Court to act as a fact-
finding commission but it is acutely sensitive to the capricious
exercise of power that has been broadly granted to an ad-
ministrative agency.

7. MUNICIPAL CORPORATIONS—BOARD OF ZONING APPEALS—VARIANCE
—FINDINGS.

A city board of zoning appeals must state the grounds upon
which it justifies the granting of a variance, the extent and
detail of the disclosure not being capable of precise delinea-
tion (CL 1948, § 125.581 *et seq.*; Detroit Zoning Ordinance
[1957], § 20.7).

8. SAME—ZONING—ADMINISTRATIVE LAW—JUDICIAL REVIEW.

Neither a State legislature nor a municipal council has authority
to divest courts of their inherent power to review the action
of a board of zoning appeals or other zoning administrative
board, in order to determine whether the administrative action
unlawfully impairs personal or property rights.

9. SAME—ZONING ORDINANCE—FINAL DETERMINATION—JUDICIAL RE-
VIEW.

The provision of a city zoning ordinance that the decision of
the board of zoning appeals "shall not become final until the
expiration of 5 days from the date of entry of such order
unless the board shall find the immediate effect of such order
is necessary" does not limit the time for bringing an action

in court for the purpose of determining the validity of the board's action (Detroit Zoning Ordinance [1957], § 20.7).

10. COSTS—PUBLIC QUESTION—VARIANCE OF ZONING ORDINANCE.
   No costs are allowed in suit to determine validity of variance of city zoning ordinance by board of zoning appeals, a public question being involved (CL 1948, § 125.581 *et seq.;* Detroit Zoning Ordinance [1957], § 20.7).

DETHMERS, C. J., and CARR and KELLY, JJ., dissenting.

Appeal from Wayne; Toms (Robert M.), J. Submitted January 8, 1960. (Docket No. 42, Calendar No. 48,278.) Decided September 16, 1960. Rehearing denied October 10, 1960.

Bill by Tireman-Joy-Chicago Improvement Association, a nonprofit Michigan corporation, and various individual property owners against Michael F. Chernick, Belle Chernick, the Detroit Board of Zoning Appeals, its members, and the Department of Building and Safety Engineering and its commissioner, to review a determination which granted a variance in zoning permitting construction of apartments. Bill dismissed on motions. Plaintiffs appeal. Reversed and remanded.

*Allen H. Blondy (Joseph J. Geraci,* of counsel), for plaintiffs.

*Nathaniel H. Goldstick,* Corporation Counsel, and *John F. Hathaway,* for defendant City of Detroit departments.

*J. Leon Katz* and *Earl Leader,* for defendants Chernick.

SMITH, J. Appellants complain of variances (exceptions) granted by defendant board of zoning appeals without rhyme or reason. They say that the ordinance permitting the grant of variances is vaguely phrased and without specific standards (for ex-

ample, "unnecessary hardship" is a ground). In addition they complain that the board's action here was "wholly unwarranted under the facts." What, in truth, was the warrant for the board's action? We are not told. The board says we do not have to be told.

Thus, under the board's argument, the citizen gets it going and coming. Were the legislative standards followed by the board? There are no specific standards to be followed. What, then, are the reasons for the board's finding the broad standard of "unnecessary hardship" to be satisfied? No one knows. No reasons are given. In other words it boils down to this: There is unnecessary hardship because there is unnecessary hardship, and, because there is unnecessary hardship, the standard (of unnecessary hardship) is satisfied.

Thus by mumbling an incantation the bureaucrat forecloses effective judicial review. What is there, for example, in the case before us, to review? After all, unnecessary hardship obviously is unnecessary hardship. Such was the factual determination. The legal determination is equally simple: The statute requires merely a case of unnecessary hardship. We found it, says the board. *Q.E.D.*

There are many things that this is, but we will forego elaboration at length, much as we would relish the task. But one thing it is not: due process. And if there is lack of due process it is utterly immaterial whether the complainant charges, as well, fraud, bad faith, mendacity, deceit, or any of the other of the lengthy litany of bad words.

Appellees Michael and Belle Chernick, defendants below, are the owners and contract purchasers of certain parcels of land located on the east side of Wyoming between Joy road and McKenzie street in the city of Detroit. This area is classified as R–2 under the Detroit zoning ordinance. It is limited

to the uses and structures falling within that classification, among which are multiple dwellings occupied by not more than 8 families, approved by the city plan commission. On October 22, 1958, Chernick and his wife made application to the department of buildings and safety engineering for building permits which would allow them to erect 2 multiple dwellings on this property. One of the proposed structures was to be an 18-unit structure on lots 127 through 133 of Robert Oakman Land Company's Bonaparte Boulevard subdivision; the other, a 20-unit structure on lots 136 through 143 of the same subdivision. This application was denied. Upon appeal to the board of zoning appeals, a variance was granted, on November 5, 1958, permitting the erection of the desired dwellings. On January 29, 1959, the appellant Improvement Association and others, plaintiffs below, filed a bill of complaint in the Wayne county circuit court, in equity, to review the orders of the board of zoning appeals granting the variance. After argument, plaintiffs' amended bill of complaint was dismissed by the lower court in separate motions filed by defendants Michael and Belle Chernick, and by defendants board of zoning appeals and department of building and safety engineering, and its commissioner. This appeal is taken from said order granting the defendants' motions to dismiss.

The framework for zoning in the city of Detroit is provided by the Detroit zoning ordinance, passed pursuant to, and in compliance with, the enabling act.[1] If an individual wishes to use his property in a manner not permitted by the ordinance, a procedure is provided whereby he may obtain a "variance," i.e., relief from compliance with the literal terms of the ordinance. Thus if the corner lot on a street has an irregular shape, because of confluence of streets,

[1] CL 1948 and CLS 1956, § 125.581 et seq. (Stat Ann 1958 Rev § 5.2931 et seq.).

rather than the normal rectangular shape of the rest of the lots, a variation might conceivably be justified if the ordinance prohibits attached garages. But in such case, it will be noted, there is a hardship unique to this particular lot, not shared by all others. The power to grant the variance, as has been said, acts as a safety valve in such situations. But it is perfectly obvious that unless the power to grant variances is circumscribed with care we have not a safety valve in the boiler, but, as some writers put it, a leak. Each owner's desire to put his property to his own desired uses, gasoline filling station, apartment houses, or what not, if indulged, would simply mean no effective zoning whatever. It was well put in a recent study of the variance problem[2] that:

"This 'hidden zoning' is unfair and will eventually undermine confidence in the protection that zoning is supposed to bring * * * Finally, the use of zoning as a positive and thus necessarily strict measure to aid in comprehensive city planning is impossible if the board of appeals constantly creates new problems of land use."

A modification, or variance, then, may be granted, according to the terms both of the enabling act and of the ordinance, only when a literal enforcement of the provision in question would result in "unnecessary hardship or involves practical difficulties." Here the board so found. Why? What is there in the situation or location of lots 127 through 133, and lots 136 through 143 that makes out a case of "unnecessary hardship" if defendants Chernick may not construct large multiple dwellings thereon? The board does not tell us. All we have is its conclusion, framed in the precise words of the ordinance, that there was "practical difficulty and unnecessary hard-

---

[2] Reps, Discretionary Powers of the Board of Zoning Appeals, 20 Law and Contemporary Problems, pp 280, 282.

ship." And at this juncture appellants make their attack, namely, that such finding was "a whimsical conclusion, and wholly unwarranted under the facts," that "the substance and effect of the decisions of the board of zoning appeals is to create 'spot zones' for the benefit of the defendants Chernick," and that such alleged abuses have resulted since: "The power to grant exceptions [variances?] from literal enforcement of the ordinance by the board of zoning appeals is coupled with no guides or standards by which it shall exercise such authority."

The delegation of authority to the board of zoning appeals to grant variances is found in section 20.7 of the zoning ordinance, City of Detroit, Official Zoning Ordinance (1957), § 20.7, p 24, which provides as follows:

"Where owing to special conditions a literal enforcement of the provisions of this ordinance will result in unnecessary hardship or involve practical difficulties, the board shall have power upon appeal in specific cases to authorize such variation or modification of the terms of this ordinance as will not be contrary to the public interest and so that the spirit of this ordinance shall be observed, public safety secured and substantial justice done."

The above language respecting "unnecessary hardship" and "practical difficulties" is common to legislation in many States.[3] Whether the twin concepts of hardship and impracticality must be defined more precisely, or are capable of more precise definition, is debatable. Most courts have approved delegation in such terms,[4] although it has occasionally

[3] See Green, The Power of the Zoning Board of Adjustment to Grant Variances from the Zoning Ordinance, 29 NC L Rev 245.

[4] *E.g., Thayer* v. *Board of Appeals of Hartford* (1931), 114 Conn 15 (157 A 273); *Matter of Otto* v. *Steinhilber* (1939), 282 NY 71 (24 NE2d 851); *Stolz* v. *Ellenstein* (1951), 7 NJ 291 (81 A2d 476).

been rejected.[5] Actually, however, the courts are not far apart, for many of them, while upholding delegation framed in broad language, require not merely conclusions, but a statement of the basis for the board's findings of "unnecessary hardship" and "practical difficulty," set forth in factual detail, thus preventing arbitrary, unguided action. In other words, the latter courts have distinguished an invalid delegation from an arbitrary exercise of authority validly delegated by requiring the board to set forth the reasons and facts upon which it bases its findings of "unnecessary hardship" or "practical difficulty." In *Stolz* v. *Ellenstein*, 7 NJ 291 (81 A2d 476), the board of adjustment granted a variance after making a personal inspection but without disclosing on the record the facts and circumstances that impelled their action. The supreme court of New Jersey held that full disclosure on the record of the facts relied upon for the board's findings was requisite, citing (p 297) an earlier opinion in *Giordano* v. *City Commission of the City of Newark*, 2 NJ 585, 589 (67 A2d 454, 455):

"No determination can be permitted to rest upon undisclosed findings or information dehors the record. If such could be the parties would be denied the essence of a hearing, they would be kept in ignorance of the things controlling the action of the board, and due process would be flouted. The rights of the parties can only be protected, both in the trial tribunal and on review, by a full disclosure on the record of the facts relied upon for the board's findings."

This requirement of full disclosure is particularly meaningful where, as here, the ordinance states[6] that:

[5] *Welton* v. *Hamilton* (1931), 344 Ill 82 (176 NE 333); *Jack Lewis, Inc.*, v. *Mayor and City Council of Baltimore* (1933), 164 Md 146 (164 A 220); *Sugar* v. *North Baltimore Methodist Church* (1933), 164 Md 487 (165 A 703).

[6] City of Detroit, Official Zoning Ordinance (1957), § 20.7, p 24.

"The decision of the board in these and all other matters heard by it shall be final insofar as it involves discretion or the finding of facts."

The courts are thus precluded from a reversal of the ruling of the board save upon the traditional grounds of showing of arbitrary action or a clear abuse of discretion. Such judicial function cannot, however, be discharged without a knowledge of the facts justifying the board's statutory conclusion. The combination of the delegation of broad powers plus restricted review cannot be employed to prevent all recourse to the courts. It may be well to emphasize again, as in the past, that it is neither the function nor desire of this Court to act as a fact-finding commission or a superzoning commission. *Brae Burn, Inc.,* v. *City of Bloomfield Hills,* 350 Mich 425. Nevertheless we remain acutely sensitive to the capricious exercise of power, particularly when broadly granted.

It is our holding, on this branch of the case, that the board of zoning appeals must state the grounds upon which it justifies the granting of a variance. So far as *Beardsley* v. *Evangelical Lutheran Bethlehem Church,* 261 Mich 458, may be interpreted as inconsistent herewith it must be regarded as overruled. The extent and detail of such disclosure are obviously not capable of precise delineation.

The court of appeals of New York has required that, before a variance may be granted upon the ground of unnecessary hardship, the record must show: (1) that the land cannot yield a reasonable return if used only for a purpose allowed in that zone, (2) that the plight of the owner is due to unique circumstances and not to the general conditions of the neighborhood, and (3) that the use sought will not alter the essential character of the neighborhood. *Matter of Taxpayers' Association* v. *Board of Zoning*

*Appeals of Town of Hempstead,* 301 NY 215 (93 NE2d 645) ; *Matter of Otto* v. *Steinhilber,* 282 NY 71 (24 NE2d 851).[7]

Defendants next urge that plaintiffs' court action was not "taken timely." We are not specifically told what "timely" action would be. The trial court relied upon the 30-day limitation for court review of orders concerning nonconforming uses,[8] obviously not here involved. It is a fair interpretation, however, of appellees' briefs, that they rely upon the 5-day provision respecting "finality" of decision. The enabling act provides as follows:[9]

"The decision of such board shall not become final until the expiration of 5 days from the date of entry of such order unless the board shall find the immediate effect of such order is necessary for the preservation of property or personal rights and shall so certify on the record."

The meaning of the above is made clear upon examination of the history of the act. The original provision was simply that the decision of the zoning board of appeals should be final insofar as it involved discretion in the finding of facts.[10] Clearly, this meant no more than that the decision of the board of appeals was final as to their proper findings of fact. It cannot reasonably be construed to state that the judiciary is to be foreclosed thereby from its hearing of the charge here made, of abuse of discretion. As one author phrases it:[11]

"There is always a minimum inherent judicial power of review of administrative action, and this is

---

[7] See, also, 8 McQuillin, Municipal Corporations (3d ed), § 25.167; 1 Metzenbaum, Zoning (2d ed), pp 769–772.

[8] CL 1948, § 125.590 (Stat Ann 1958 Rev § 5.2940).

[9] CLS 1956, § 125.585, subd (d) (Stat Ann 1958 Rev § 5.2935, subd [d]).

[10] PA 1921, No 207, § 5, subd (d), p 405.

[11] 8 McQuillin, Municipal Corporations (3d ed), § 25.302, p 751. See, also, 3 Metzenbaum, Zoning (2d ed), p 1878; 1 Yokley, Zoning Law and Practice (2d ed), p 325.

true with respect to zoning.  *  *  * Accordingly, neither a State legislature nor a municipal council has authority to divest courts of their inherent power to review the action of a board of zoning appeals or other zoning administrative board, in order to determine whether the administrative action unlawfully impairs personal or property rights."

The generally accepted meaning of such a proviso as that involved here is simply that the appellate court cannot act as a fact-finding commission. It cannot substitute its judgment for that of the board. The zoning ordinance, it will be noted, reads as follows :[12]

"The decision of the board in these and all other matters heard by it shall be final insofar as it involves *discretion or the finding of facts."* (Emphasis added.)                                            .

Such provision undoubtedly reflects the correct interpretation of the words in the enabling statute. It cannot be held that the purpose of the 5-day provision was to create a period of limitation of such short duration, particularly in view of the complexity of pleadings and exhibits required for the proper presentation of involved zoning cases. As a practical matter, so interpreted it might well include all recourse to the courts. Moreover, if the 5-day provision creates a 5-day statute of limitation, by parity of reasoning, no court action whatever would be available if the order were given immediate effect, a procedure permitted by the enabling act under some circumstances.[13] It is our conclusion that the 5-day provision does not limit the time for bringing an action.

There is nothing to the contrary in *Jones* v. *DeVries,* 326 Mich 126, *Mitchell* v. *Grewal,* 338 Mich

---

[12] City of Detroit, Official Zoning Ordinance (1957), § 20.7, p 24.
[13] CLS 1956, § 125.585, subd (d) (Stat Ann 1958 Rev § 5.2935, subd [d]).

81, or *McVeigh* v. *City of Battle Creek,* 350 Mich 214. None of them decided that there was only 5 days allowed for appeal to the courts when the order becomes "final" in 5 days, or (which would logically follow) that there is no access to the courts whatever if the order becomes final immediately. Such remains for this Court. Our opportunity, in fact, is unique. We can first approve a legislative standard so vague as to require factual disclosures to justify action under it, next deny the necessity for making any factual disclosure whatever, and, finally, having given the citizen nothing to review, tell him that he has 5 days to do it in, unless, of course, the order becomes "final" immediately, in which case he cannot get into court at all. We return to our opening thesis: Many things this is, all of them offensive. But one thing it is not: due process.

Reversed and remanded to the circuit court for proceedings not inconsistent herewith. No costs, a public question.

BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred with SMITH, J.

KELLY, J. (*dissenting*). Appellants' 7 questions in their "statement of questions involved" do not request reversal because the board of zoning appeals failed to set forth the facts that resulted in the board's granting of variance.

Appellants inform this Court that they did not "charge the board with 'fraud or bad faith.' "

The Detroit corporation counsel and attorneys for appellees ask this Court to keep in mind the character of the block involved by stating:

"On the north end of the block on the east side of Wyoming avenue, which is a heavily traveled main street, there is located a Cunningham drug store and a supermarket. Directly south thereof is a

large parking lot zoned P-1, which classification allows the parking of motor vehicles only. On the south end of the block, there are located 3 multiple dwellings 2 of which were erected under permits granted by the city plan commission of the city of Detroit in 1952. The third building was erected, after a denial by the city plan commission, as a result of an action for a writ of mandamus filed in the circuit court in 1956. The circuit court issued its writ directing the department of buildings and safety engineering to issue a permit for the erection of said multiple dwelling. The rest of the block remains vacant, and it is on the vacant portion that the defendants Chernick now wish to erect the 2 multiple dwellings aforementioned. Permits have been issued by the department of buildings and safety engineering for said multiple dwellings."

The board in its findings alleges that "field inspections of the premises were made, reports of which were given at the hearing" and that "based upon the information obtained and evidence presented * * * the board found that the proposed construction and use would not be unduly harmful or injurious to other property owners in interest." The board also found that defendants were faced with "practical difficulty and unnecessary hardship."

Justice SMITH, after setting forth the provisions of the ordinance that: "The decision of the board in these and all other matters heard by it shall be final insofar as it involves discretion or the finding of facts," properly concludes that courts, including this Court, are precluded from a reversal unless there is a showing of arbitrary action or a clear abuse of discretion.

In my opinion the record in this case does not disclose arbitrary action or clear abuse of discretion and does not call for reversal of the decisions of the board of zoning appeals and the circuit court of Wayne county.

Plaintiffs' bill of complaint (filed January 29, 1959) to review the orders of the board of zoning appeals was filed 85 days after the board's orders (November 5, 1958). Plaintiffs were represented by counsel at the hearing before the board.

Justice SMITH sets forth the paragraph of the enabling act stating that the decision of the board becomes final after the expiration of 5 days from the entry of the order. (CLS 1956, § 125.585, subd [d] [Stat Ann 1958 Rev § 5.2935, subd (d)].)

I agree with appellees that the decision of the board became final because of failure of timely appeal and to sustain this conclusion refer to our decisions in *Jones* v. *DeVries,* 326 Mich 126; *Mitchell* v. *Grewal,* 338 Mich 81; and *McVeigh* v. *City of Battle Creek,* 350 Mich 214.

In *Jones* v. *DeVries, supra,* appealed to this Court since the zoning enabling statute was amended to provide that the orders of zoning appeal boards are final after 5 days unless made immediately effective, we stated (p 133):

"Right of review by the courts *if the proceedings are instituted within the time prescribed,* as was done in the instant case, is clearly indicated in the amended statute to which the ordinance must conform, and such is established practice in this jurisdiction." (Emphasis supplied.)

In *Mitchell* v. *Grewal, supra,* at page 92, we said:

"Immediate effect was given to the order of the board, and that order must be held to be final in the absence of fraud or bad faith. No evidence of this nature was adduced. The trial judge was correct in refusing to substitute his discretion for that of the board."

In *McVeigh* v. *City of Battle Creek, supra,* it was held that the board of zoning appeals could not grant a rehearing of its own decision after the expiration

of 5 days upon the request of the city itself, and that its original order was final and conclusive against the city.

Decree should be affirmed. No costs, a public question being involved.

Dethmers, C. J., and Carr, J., concurred with Kelly, J.