*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LISA MONTRIEF, DEAN T. MONTRIEF, STEVE BAILEY, DANIEL MILLS, JANET M. MILLS, COLIN ROEHM, ANJLIA MASLAK, TRUMAN CARRICO, KIMBERLY SELLERS CARRICO, JOSEPH R. RINE, LEESA R. RINE, MICHAEL RINE, JOSEPH DOWNARD, MARTHA DROW, VICTORIA L. ROBERTS, CHIP ROBERTS, DARWIN SCHOEFF, JOANNE SCHOEFF, DAVID SQUIRES, HELEN SQUIRES, RONALD G. JOHNSON, WILLIAM A. BEDELL, DONALD SCHROEDER, MARJORIE MONAGIN, BARBARA KORICAN, KEITH PRICE, JUDITH BAILEY, WILLIAM BAILEY, JOE E. O'NEAL, KAREN KOYKKA O'NEAL, and TECUMSEH MILLS AIRPORT, LLC,

UNPUBLISHED
October 06, 2025
10:01 AM

Appellants,

v

No. 366016
Lenawee Circuit Court
LC No. 2021-216712-AA

MACON TOWNSHIP BOARD OF TRUSTEES,

Appellee,

and

MUSTANG MILE SOLAR ENERGY, LLC, and CONSUMERS ENERGY COMPANY,

Intervening Appellees.

Before: GADOLA, C.J., and RICK and MARIANI, JJ.

PER CURIAM.

-1-

Appellants appeal as of right the circuit court's order affirming the decision of appellee Macon Township Board of Trustees granting a special land use permit to Intervening Appellee Mustang Mile Solar Energy, LLC for the construction of an industrial-scale solar panel facility in Macon Township. We vacate the order of the circuit court and the decision of the Township Board, and remand to the Township Board for further proceedings.

## I. FACTS

Macon Township is a rural, agricultural township in southeastern Michigan. Mustang Mile Solar Energy, LLC (Mustang) is a subsidiary of Invenergy, a Chicago-based multi-national power generation company. In 2017, Invenergy approached appellee Macon Township Board of Trustees (the Township Board) seeking to persuade the Township Board to amend the township's zoning ordinance to permit Invenergy to install an industrial-scale solar panel facility anticipated to occupy 2,777 acres[1] in the township. At that time, the township's ordinance did not provide for permitting a large-scale solar panel facility as a special use.

In 2018, the Township Board amended the township's zoning ordinance to include the Solar Ordinance, which provided for the permitting of industrial-scale solar facilities as a special use on land zoned agricultural or industrial within the township. The amendment of the zoning ordinance apparently went unnoticed by the majority of the community at that time. After the adoption of the 2018 amendments, a representative of Invenergy kept the Macon Township Planning Commission and the Township Board apprised of Invenergy's efforts to commence the solar project, and sought further amendments to the Solar Ordinance to facilitate the permitting of the project. See *Montrief v Macon Twp Bd of Trustees*, unpublished per curiam opinion of the Court of Appeals, issued April 27, 2023 (Docket No. 360437), p 2-3. In 2019 and 2020, the Township Board approved additional amendments to the township's ordinance. *Id.* at 3.

Thereafter, Invenergy, through its subsidiary, Mustang, applied for a special land use permit to build the industrial-scale solar facility in the township, which was to be owned and operated by intervening appellee Consumers Energy Company (Consumers). *Id.* at 1, 3. Having belatedly learned of the proposed solar facility, the community largely was opposed to the project. *Id.* at 3 n 4. After conducting a review of Mustang's site plan, the Macon Township Planning Commission recommended that the Township Board deny the special use permit, finding that "the site plan and related information received by the township from the applicant for the Mustang Mile Solar Energy Center fails to meet the required standards and finding[s] for the special land use. . . ." Despite the recommendation of the Planning Commission that the special land use permit be denied, the Township Board approved the special use permit by a 3-2 vote, with then-Township Supervisor Lee Wagner voting in favor of granting the permit.

---

[1] Mustang asserts that the actual solar panels would occupy only 350 acres within the Township.

Appellants are landowners in Macon Township. Appellants appealed to the circuit court the Township Board's decision to grant the special use permit.[2] On appeal, appellants asserted, among other facts, that then-Township Supervisor Wagner and his wife owned property within the proposed Solar Project footprint. Appellants asserted that Wagner had been a key proponent of the Solar Project during the application and review process, was the only member of the Planning Commission to vote against recommending denial of the special land use permit, and was the deciding vote granting the special land use permit. Wagner's signature as Township Supervisor appears on the May 10, 2021 approval of the permit. Although the Wagners allegedly sold their property to another purchaser before the permit was issued, it was alleged that the Wagners had leased the property to Mustang before January 15, 2020, while Wagner was advocating in favor of the solar project. According to appellants, Wagner did not disclose this conflict of interest.

The circuit court entered a stipulated order allowing Mustang and Consumers to intervene as appellees. The circuit court thereafter affirmed the Township Board's decision granting the special land use permit, finding that the Township Board's decision was authorized by law and supported by competent, material, and substantial evidence on the whole record. Appellants now appeal, challenging the order of the circuit court. The Township Board, now comprised of different board members, does not challenge the position of appellants on appeal, and in fact agrees with appellants that the approval of the special land use permit was not authorized by law and not supported by competent, material, and substantial evidence on the whole record. Intervening appellees Mustang and Consumers continue to oppose appellants' challenge.

## II. DISCUSSION

## A. AGGRIEVED PARTIES

We address initially intervening appellees' contention on appeal that appellants are not aggrieved parties. To the extent that intervening appellees' challenge may be understood as a challenge to this Court's jurisdiction under MCR 7.203(A) on the basis that appellants do not have standing because they are not parties aggrieved by the circuit court's order, we disagree. We note that a challenge to subject matter jurisdiction may be raised at any time, even for the first time on

---

[2] Appellants also filed a separate action in the trial court seeking a declaratory judgment that the Solar Ordinance was invalid. The trial court granted summary disposition to the defendants in that case (the Township Board, Mustang, and Consumers), on the basis that appellants lacked standing to seek declaratory relief. On appeal, this Court held that appellants had standing, and reversed the order of the trial court, remanding to the trial court for further proceedings. *Montrief*, unpub op at 8-9. On remand, the trial court granted summary disposition to the defendants under MCR 2.116(C)(8) and (10) on the basis that the Solar Ordinance was properly enacted and therefore was valid. This Court affirmed the trial court's order on appeal. See *Montrief v Macon Twp Bd of Trustees*, unpublished per curiam opinion of the Court of Appeals, issued October 1, 2025 (Docket No. 368603).

-3-

appeal. *New Covert Generating Co, LLC v Twp of Covert*, 334 Mich App 24, 45; 964 NW2d 378 (2020). We reject such a jurisdictional challenge in this case, however.

This Court has jurisdiction of an appeal of right filed by an aggrieved party from a final judgment or final order of the circuit court.[3] MCR 7.203(A)(1). In other words, one seeking appellate relief in this Court from the circuit court must be a party aggrieved by the actions of the circuit court. *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 291-292; 715 NW2d 846 (2006). An aggrieved party on appeal is "one who is not merely disappointed over a certain result," but rather, one who has "suffered a concrete and particularized injury, as would a party plaintiff initially invoking the court's power," and on appeal "must demonstrate an injury arising from either the actions of the trial court or the appellate court judgment." *Id*. In this case, appellants are parties aggrieved by the circuit court's order affirming the Township Board's decision, which defeated their claims and thereby established a concrete injury entitling appellants to appeal as aggrieved parties under MCR 7.203(A).

It appears, however, that intervening appellees do not challenge this Court's subject matter jurisdiction, but rather challenge the circuit court's determination that appellants are aggrieved parties entitled to challenge the Township Board's decision to grant Mustang the special land use permit. Although generally an appellee who has not filed a cross-appeal is limited to the issues raised on appeal by the appellant, an appellee may urge affirmance on alternative grounds without filing a cross-appeal. *Schulmeyer v Labor & Economic Opportunity Dep't*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 368792); slip op at 3 n 3. Because intervening appellees raise this issue as an alternative basis to affirm the circuit court's final order, we will consider this issue.

In Michigan, in addition to the original jurisdiction granted to the circuit courts, see Const 1963, art 6, § 13; see also MCL 600.605, the circuit courts also have certain appellate jurisdiction. *Zelasko v Charter Twp of Bloomfield*, 347 Mich App 141, 155; 14 NW3d 441 (2023). The circuit court's appellate jurisdiction includes an appeal of right filed by an aggrieved party from "a final order or decision of an agency from which an appeal of right to the circuit court is provided by law." *Id*., quoting MCR 7.103(A)(3). Section 605 of the Michigan Zoning Enabling Act (MZEA) provides that an aggrieved party is entitled to challenge a decision of a zoning board of appeals by appeal of the decision to the circuit court. MCL 125.3605. When, as in this case, a township ordinance does not provide for review of a township board's decision on a request for a special land use permit by a zoning board of appeals, a township board's decision is final and subject to appellate review by the circuit court under Const 1963, Art 6, § 28. *Zelasko*, 347 Mich App at 156.

---

[3] An exception is a judgment or order of the circuit court resolving an appeal from another court or tribunal. MCR 7.203(A)(1)(a). But although this case is an appeal of an order of the circuit court resolving an appeal from a decision of the Township Board, the Township Board in this case was not a "tribunal" for purposes of MCR 7.203(A)(1)(a). See *Natural Resources Defense Council v Dep't of Environmental Quality*, 300 Mich App 79, 86; 832 NW2d 288 (2013).

To demonstrate the status of aggrieved party, the party (1) must have participated in the challenged proceedings by taking a position on the contested decision, such as by letter or public comment, (2) must claim a legally protected interest or protected personal, pecuniary, or property right likely to be affected by the challenged decision, and (3) must provide evidence of special damages arising from the challenged decision in the form of actual or likely injury or burden on their asserted interest or right different in kind or more significant in degree than the effect on others in the local community. *Saugatuck Dunes Costal Alliance v Saugatuck Twp*, 509 Mich 561, 569, 595; 983 NW2d 798 (2022).

In this case, appellants participated in the proceedings before the Township Board. They claimed a legally protected interest or protected property right likely to be affected by the special use permit, and they have alleged facts supporting their claims that the alleged damage from the special use permit will affect their properties differently or more significantly in degree than the effect on others in the community.[4] The trial court therefore did not err by determining that appellants are aggrieved parties permitted to appeal to the circuit court as of right the decision of the Township Board granting Mustang a special use permit.

## B. ORDINANCE §§ 16.06 AND 17.06

Appellants contend that the circuit court erred by affirming the Township Board's decision granting Mustang the special use permit. Appellants argue that the Township Board approved the request for the special land use permit without specifically finding that Mustang's application met the required elements of §§ 16.06 and 17.06 of the township's ordinance, and as a result, the Township Board's decision to grant the permit was not authorized by law, and was not supported by competent, material, and substantial evidence on the whole record. Appellants argue that because the Township Board's decision was not authorized by law or supported by the requisite evidence, the circuit court did not apply the correct legal principles and misapprehended or grossly misapplied the substantial evidence test to the Township Board's factual findings when it affirmed the Township Board's decision. We agree.

## 1. STANDARD OF REVIEW

As noted, when a township ordinance does not provide for review of a township board's decision by a zoning board of appeals, a township board's decision is subject to appellate review by the circuit court under Const 1963, art 6, § 28. *Zelasko*, 347 Mich App at 156. Const 1963, art 6, § 28 provides, in relevant part:

All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law;

---

[4] For example, the O'Neal appellants alleged facts supporting that their historic rural property would lose its value as a tourist destination when flanked by solar panels on two sides; the Airport appellant alleged facts supporting that the solar panels would jeopardize pilot and passenger safety.

and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. . . .

MCR 7.122(G)(2) similarly provides:

In an appeal from a final determination under a zoning ordinance where no right of appeal to a zoning board of appeals exists, the court shall determine whether the decision was authorized by law and the findings were supported by competent, material, and substantial evidence on the whole record.

Thus, in its review of the Township Board's decision in this case, the circuit court was required to determine whether the Township Board's decision was authorized by law and whether the Township Board's findings were supported by competent, material, and substantial evidence on the whole record. See *Meier v Pub Sch Employees' Retirement Sys*, 343 Mich App 571, 577; 997 NW2d 719 (2022). A decision is not authorized by law when it violates the Constitution or a statute, when it exceeds the agency's authority or jurisdiction, when the decision was made pursuant to unlawful procedures resulting in material prejudice, or if the decision was arbitrary and capricious. *Id*. With regard to whether the decision is supported by competent, material, and substantial evidence, that test is met if the evidence is that which "a reasoning mind would accept as sufficient to support a conclusion," which is more than a scintilla, but less than a preponderance of the evidence. *Id*.

When reviewing a circuit court's decision on appeal to that court from an administrative decision, this Court determines whether the circuit court "applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the [township board's] factual findings." *Pegasus Wind LLC v Tuscola Co*, 513 Mich 35, 45; 15 NW3d 108 (2024) (quotation marks and citation omitted). "Whether a circuit court misapprehended or grossly misapplied the substantial evidence test is reviewed under a standard identical with the clearly erroneous standard." *Id*. (quotation marks and citation omitted). "A finding is clearly erroneous if the reviewing court, on the whole record, is left with the definite and firm conviction that a mistake has been made." *Id*. We are mindful that, although our determination whether the circuit court correctly applied the substantial evidence standard requires our review of the record, our review is not a de novo review of the proceedings before the Township Board. See *id*. at 41.

2. AUTHORIZED BY LAW

In this case, the circuit court determined that the Township Board's decision was authorized by law. In reaching that conclusion, the trial court reasoned:

Both Appellants and the Township argue that the approval of the SLUP was not authorized by law because the Township failed to consider the standards for site plan approval under Section 17.06 of the Zoning Ordinance. Mustang Mile responded that it properly applied for the special land use and site plan approval as required by the Zoning Ordinance and Michigan Zoning Enabling Act. Following that application, the Macon Township Planning Commission reviewed the

-6-

application and site plan, **recommended approval to the Township Board**,[5] and the Township Board made the final decision authorizing the SLUP. Mustang Mile's position is that this process was proper, and therefore the Board's action was authorized by law.

Article XVII of the Zoning Ordinance gives specifications regarding what the site plan must contain, and other details relating to site plans. Section 17.02 specifically lists a "special land use" as needing site plan approval in compliance with Article XVII. Section 17.06 details the standards for approval of a site plan. Section 16.06 also requires review of the site plan in order for a special land use permit to be issued. Reconciling the varying standards of Sections 16.06 and 17.06 requires a detailed reading of the language in each.

Notably, Section 17.06 offers the standard solely for "site plan review," whereas Section 16.06 requires a broader, combined "review of the site plan and the particular circumstance and facts of each proposed use . . . ." In other words, Section 16.06 requires the Planning Commission to have considered the factors in Section 17.06 with respect to the site plan alone prior to considering the site plan combined with "the particular circumstances and facts of each proposed use." As a result, reaching the Section 16.06 factors at all implies that the Section 17.06 factors have already been satisfied, as Section 16.06 requires site plan approval for consideration of the broader factors contained within that section, necessitating consideration of the Section 17.06 factors first. Whether the Planning Commission adequately considered those factors is more appropriately analyzed under the second test, discussed below.

In short, there has been no demonstration of a flaw with the procedure the Township followed to grant the SLUP at issue here. . . . [Emphasis added.]

Appellants contend that the circuit court erred in its determination that the Township Board's decision was authorized by law because the Township Board failed to make factual findings under §§ 16.06 and 17.06 of the Macon Township Zoning Ordinance, which they argue were required under the ordinance. Appellants argue that because the Township Board was required by MCL 125.3501 to consider those sections of the ordinance when approving the site plan, the Township Board's approval of the site plan and the granting of the special use permit was not authorized by law. Section 501 of the MZEA, MCL 125.3501, provides:

---

[5] It appears the circuit court mistakenly believed that the Planning Commission recommended approval of Mustang's application for a special land use permit. A review of the record indicates that the Planning Commission recommended that the Township Board *deny* Mustang's application, finding that "the site plan and related information received by the township from the applicant for the Mustang Mile Solar Energy Center fails to meet the required standards and finding[s] for the special land use."

(1) The local unit of government may require the submission and approval of a site plan before authorization of a land use or activity regulated by a zoning ordinance. The zoning ordinance shall specify the body or official responsible for reviewing site plans and granting approval.

(2) If a zoning ordinance requires site plan approval, the site plan, as approved, shall become part of the record of approval, and subsequent actions relating to the activity authorized shall be consistent with the approved site plan, unless a change conforming to the zoning ordinance is agreed to by the landowner and the body or official that initially approved the site plan.

(3) The procedures and requirements for the submission and approval of site plans shall be specified in the zoning ordinance. Site plan submission, review, and approval shall be required for special land uses and planned unit developments.

(4) A decision rejecting, approving, or conditionally approving a site plan shall be based upon requirements and standards contained in the zoning ordinance, other statutorily authorized and properly adopted local unit of government planning documents, other applicable ordinances, and state and federal statutes.

(5) A site plan shall be approved if it contains the information required by the zoning ordinance and is in compliance with the conditions imposed under the zoning ordinance, other statutorily authorized and properly adopted local unit of government planning documents, other applicable ordinances, and state and federal statutes.

To summarize, MCL 125.3501(3) requires site plan submission, review, and approval by the local unit of government for special land uses. The Township Board's decision either approving or rejecting the site plan must be based upon the requirements and standards of the township's zoning ordinance, among other considerations. MCL 125.3501(4). Site plan approval is thus contingent upon compliance with the conditions imposed under the zoning ordinance, among other considerations. MCL 125.3501(4) and (5).

Article 16 of the Macon Township zoning ordinance concerns special land uses. Section 16.03 requires a site plan to be submitted with an application for a special land use permit. Section 16.06 requires the site plan to be reviewed in conjunction with the proposed land use by the township's Planning Commission under six standards:

Section 16.06.  REQUIRED STANDARDS AND FINDINGS FOR MAKING DETERMINATION

The Planning Commission shall review the site plan and the particular circumstances and facts of each proposed use in terms of the following standards and required findings, and shall find and record adequate data, information, and evidence to determine if such a use on the proposed site, lot, or parcel meets the following requirements:

-8-

a. Will be harmonious with and in accordance with the general objectives, intent, and purposes of this Ordinance.

b. Will be designed, constructed, operated, maintained, and managed so as to be harmonious and appropriate in appearance with existing or intended character of the general vicinity.

c. Will be served adequately by essential public facilities and services, such as: highways, streets, police and fire protection, drainage structures, refuse disposal, or that the persons or agencies responsible for the establishment of the proposed use shall be able to provide adequately any such service.

d. Will not be hazardous or disturbing to existing or future neighboring uses.

e. Will not create excessive additional requirements at public cost for public facilities and services.

f. All standard[s] specific and applicable to special land uses identified in other sections of this ordinance shall apply.

Section 16.08 provides, in relevant part that "[a]pproval and issuance of a special land use permit by the Township of Macon Board shall signify prior approval of the application and site plan. . . . "

Article 17 of the Macon Township zoning ordinance addresses site plan review by the Planning Commission and the Township Board. Section 17.01 states, in relevant part, that "this Ordinance requires site plan review by the Township Board on recommendation by the Planning Commission for certain buildings and structures that can be expected to have a significant impact on natural resources, traffic patterns, and on adjacent land usage." Section 17.02 includes "any special land use" in the category of buildings, structures and uses for which a zoning compliance permit may not be issued "unless a site plan has been reviewed and approved by the Township Board Planning Commission and such approval is in effect." Section 17.04 requires the Planning Commission to review the site plan and recommend approval or disapproval of the site plan to the Township Board; the Township Board is then required to review the site plan and the recommendation of the Planning Commission, approve or disapprove the site plan, and advise the applicant of the recommendation. Section 17.05 requires the site plan to contain specified information, while § 17.06 sets forth the standards for site plan review as follows:

Section 17.06. STANDARDS FOR SITE PLAN REVIEW

In reviewing the site plan, the Planning Commission shall ascertain whether the proposed site plan is consistent with all regulations of this Ordinance and state and federal statutes. Further, in consideration of each site plan, the Planning Commission shall find that provisions of Subsections 17.03 and 17.05 of this Ordinance as well as the provisions of the zoning district in which said buildings, structures, and uses as indicated in the proposed site plan have been satisfactorily met by the applicant. Decisions rejecting, approving, or conditionally approving a site plan shall be based upon requirements and standards contained in the zoning

ordinance. A site plan shall be approved if it contains the information required in Subsection 17.03 and 17.05 and is in compliance with the zoning ordinance, the conditions imposed pursuant to the ordinance, other applicable ordinances, and state and federal statutes.

In addition each of the following standards shall apply:

a. The use shall be designed, constructed, operated and maintained in a manner harmonious with the character of adjacent property and the surrounding area.

b. The use shall not inappropriately change the essential character of the surrounding area.

c. The use shall not interfere with the general enjoyment of adjacent property.

d. The use shall represent an improvement to the use or character of the property under consideration and the surrounding area in general, yet also be in keeping with the natural environment of the site.

e. The use shall not be hazardous to adjacent property, or involve uses, activities, materials or equipment which will be detrimental to the health, safety, or welfare of persons or property through the excessive production of traffic, noise, smoke, odor, fumes, glare, or dust.

f. The use shall be adequately served by essential public facilities and services, or it shall be demonstrated that the person responsible for the proposed use shall be able to continually provide adequately for the services and facilities deemed essential to the use under consideration.

g. The use shall not place demands on public services and facilities in excess of current capacity.

h. The use shall be consistent with the intent and purpose of this Ordinance.

In this case, the Township Board issued a special land use permit to Mustang, stating in pertinent part:

The Township Board met in open meeting on May 10, 2010 to consider the application for Special Land Use Permit. Based upon the information received from the applicant, as well as the deliberations and recommendation from the Macon Township Planning Commission, and those comments reflected in minutes of this meeting, the Macon Township Board finds the site plan and related information received by the Township from the applicant for the Mustang Mile Solar Energy Center meets the required standards and findings for Special Land Use and moves to approve the special land use permit. Specifically, it is found that the following required standards and findings found in Section 16.06 of the Zoning Ordinance have been demonstrated by the applicant.

A.  Will be harmonious with and in accordance with the general objectives, intent, and purposes of this Ordinance.

B.  Will be designed, constructed, operated, maintained, and managed so as to be harmonious and appropriate in appearance with existing or intended character of the general vicinity.

C.  That the proposed use will be served adequately by essential public facilities and services, such as: highways, streets, police and fire protection, drainage structures, refuse disposal, or that the persons or agencies responsible for the establishment of the proposed use shall be able to provide adequately any such service.

D.  That the proposed use will not be hazardous or disturbing to existing or future neighboring uses.

E.  That the proposed use will not create excessive additional requirements at public cost for public facilities and services.

F.  All standard[s] specific and applicable to special land uses identified in other sections of this ordinance have been met.

To summarize, the Planning Commission in this case was required to review the site plan and determine whether the site plan met the requirements of §§ 16.06 and 17.06, and to recommend action to the Township Board.  After completing its review, the Planning Commission determined that "the site plan and related information received by the township from the applicant for the Mustang Mile Solar Energy Center fails to meet the required standards and finding[s] for the special land use. . . ."  The Planning Commission therefore recommended to the Township Board that the special land use permit be denied.

The Township Board then approved the special land use permit, stating that based upon the recommendation of the Planning Commission, it found that Mustang's site plan and related information met the requirements of § 16.06.  The Township Board failed to state how the site plan met each requirement of § 16.06, however, and failed to reconcile its decision with that of the Planning Commission, upon which the Township Board's decision ostensibly was based.  The Planning Commission found that the site plan *failed* to meet the requirements and standards for a special land use permit, i.e., §§ 16.06 and 17.06 of the township ordinance.

In other words, the Planning Commission was required to consider both §§ 16.06 and 17.06 in its review of Mustang's site plan.  Upon completing its review, the Planning Commission found that the site plan and accompanying information did not meet the requirements of the zoning ordinance, and therefore recommended denial of the permit.  The Township Board, claiming to be acting based upon the recommendation of the Planning Commission, approved the permit without acknowledging that its decision differed from that of the Planning Commission.  The Township Board's decision does not specify a basis for its decision, contains no facts to support its findings under § 16.06, and contains no reference to § 17.06 of the ordinance.

The Township Board's haphazard procedure when arriving at its decision suggests that the Township Board, in approving the application, was either oblivious or heedless of the recommendation of the Planning Commission, as well as the standards upon which that recommendation was required to be based, and therefore the decision of the Township Board was not authorized by law. The Township Board's failure to comply with proper procedure, as well as the arbitrary and capricious manner of its decision, also appears to have caused confusion in the appeal to the circuit court; we again note that the circuit court's opinion makes reference to the Planning Commission recommending *approval* of the requested special land use permit, when the record indicates that the Planning Commission recommended that the Township Board *deny* the special land use permit. The circuit court therefore did not apply correct legal principles when affirming the decision of the Township Board.[6]

### 3. COMPETENT, MATERIAL AND SUBSTANTIAL EVIDENCE

Before a circuit court may consider whether a township board's findings are supported by competent, material, and substantial evidence, it must be ascertained whether sufficient findings were, in fact, made by a township board. MCL 125.3502(4) states:

> The body or official designated to review and approve special land uses may deny, approve, or approve with conditions a request for special land use approval. The decision on a special land use shall be incorporated in a statement of findings and conclusions relative to the special land use which specifies the basis for the decision and any conditions imposed.

This Court has explained that "[m]eaningful judicial review of whether there was competent, material, and substantial evidence on the record to support a zoning decision requires 'a knowledge of the facts justifying the board's . . . conclusion.' " *Reenders v Parker*, 217 Mich App 373, 378; 551 NW2d 474 (1996), quoting *Tireman-Joy-Chicago Improvement Ass'n v Chernick*, 361 Mich 211, 219; 105 NW2d 57 (1960). Accordingly, a township board granting or denying a special land use permit must state the grounds upon which the decision rests; merely repeating the conclusory language of a zoning ordinance without specifying the factual findings underlying the determination that the requirements of the ordinance were satisfied is inadequate to permit judicial review. *Reenders*, 217 Mich App at 378-379.

In this case, the circuit court concluded that the Township Board's findings were supported, and by searching the record, the circuit court identified evidence that could support approval of the special land use permit. A search of the record also reveals evidence supporting the Planning Commission's determination that the site plan failed to meet the standards of the zoning ordinance.

---

[6] It is somewhat understandable why the Circuit Court reached this erroneous conclusion. When the Township Board claimed that its decision to issue the special land use permit was "[b]ased upon," among other things, "the deliberations and recommendations from the Macon Township Planning Commission," one would logically assume that the Planning Commission had recommended approval of the special land use permit. Given that the Township Board certainly knew this was not the case, the quoted statement appears to be deliberately misleading.

-12-

But although a reviewing court might speculate on what factual findings could support approval or denial of the special land use permit, that would be guesswork.

The Township Board was required to incorporate into its decision on the special land use permit application "a statement of findings and conclusions relative to the special land use which *specifies the basis for the decision* and any conditions imposed." MCL 125.3502(4) (emphasis added). The purpose of judicial review of the decision is not to ascertain whether *any* evidence could serve as a basis for the Township Board's decision, but rather whether *the basis specified* by the Township Board for its decision is supported by the evidence. In this case, the Township Board failed to specify a basis for its decision; its failure to state the basis for its decision and to identify evidence in the record upon which the decision purportedly rests, evades judicial review of the decision. Again, the Township Board merely repeating the conclusory language of a zoning ordinance without specifying the basis of its decision and the factual findings underlying that decision is inadequate to permit judicial review. *Reenders*, 217 Mich App at 378-379. Without proper findings and conclusions to support its decision that the conditions of the zoning ordinance had been met, there were no findings for the circuit court appropriately to consider. The trial court therefore misapprehended the substantial evidence test and misapplied it in this case, or in other words, clearly erred.[7]

### 4. SUPERVISOR WAGNER'S PARTICIPATION

As discussed, an agency's decision is not authorized by law when it violates the Constitution or a statute, when it exceeds the agency's authority or jurisdiction, when the decision was made pursuant to unlawful procedures resulting in material prejudice, or if the decision was arbitrary and capricious. *Meier*, 343 Mich App at 577. Appellants asserted before the circuit court that they were deprived of an impartial decision-maker before the Township Board because, despite having a clear conflict of interest, Township Supervisor Wagner, without disclosing his conflict of interest, was a vocal proponent of Mustang's permit application during the application and review process, was the only member of the Planning Commission to vote against recommending denial of Mustang's application, and ultimately was the deciding vote in granting Mustang the special land use permit. Indeed, Wagner signed the decision granting the permit.

As noted, an agency's decision is not authorized by law if follows from unlawful procedure resulting in material prejudice. *Dearborn Hts Pharmacy v Dept of Health & Human Servs*, 338 Mich App 555, 559; 980 NW2d 736 (2021). In this case, Wagner's property allegedly is among those properties that Mustang sought to purchase for its solar project at the same time that Wagner was facilitating the approval process for the project. Wagner therefore allegedly had a direct pecuniary interest in whether Mustang received approval of its special land use permit, which Wagner allegedly failed to disclose. We cannot conclude that the Township Board in these

---

[7] The Circuit Court in this case was in the role of an appellate court. It was not the job of the Circuit Court to scour the record and piece together a rationale that would have supported the Township Board's decision to approve the special land use permit. Here, the Circuit Court essentially stepped in the shoes of the Township Board and articulated a basis for the Board's decision that does not appear in the record before the Circuit Court.

circumstances followed proper procedures in light of Wagner's participation. As a result, we conclude that the circuit court did not apply correct legal principles when it affirmed the decision of the Township Board.

## III. CONCLUSION

The Township Board failed to articulate a basis for its decision beyond merely restating the ordinance requirements, contrary to the requirements of MCL 125.3502(4), and its decision resulted from the participation of a township supervisor who allegedly had an undisclosed conflict of interest. Without the Township Board addressing these matters, the circuit court did not have a record before it sufficient to apply correct legal principles nor to properly apply the substantial evidence test. Although the circuit court was charged with considering the whole record before it, the paucity of the Township Board's decision left the circuit court to search the record for information that *might* have been relied upon by the Township Board in reaching its decision. Because the Township Board gave no meaningful explanation for its decision, the circuit court misapplied the substantial evidence test when affirming the Township Board's decision, and this Court is left with the definite and firm conviction that a mistake has been made. See *Pegasus*, 513 Mich at 45.

Vacated and remanded to the Township Board for further proceedings.[8] We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Michelle M. Rick

---

[8] Our decision to vacate and remand should not be construed as a determination regarding whether the Township Board, upon reconsideration, should approve or deny the application for the special land use permit.

-14-